1  MICHAEL C. CHOW (STATE BAR NO. 273912)
   mchow@orrick.com
2  HSIWEN LO (STATE BAR NO. 286649)
   hlo@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   2050 Main Street
4  Suite 1100
   Irvine, CA  92614-8255
5  Telephone:    +1 949 567 6700
   Facsimile:    +1 949 567 6710
6
   *Attorney list continued on next page*
7
   Attorneys for Defendants
8  SEMICONDUCTOR MANUFACTURING
   INTERNATIONAL CORPORATION, et al.
9

10                    UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                         SAN FRANCISCO DIVISION

13 | LONE STAR SILICON INNOVATIONS LLC, | Case No. 3:17-CV-03980-WHA

14 Plaintiff,

   **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF STANDING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF STANDING**

16 v.

17 SEMICONDUCTOR MANUFACTURING INTERNATIONAL CORPORATION, et al.,

18 Defendant.

   [Filed concurrently: Declaration In Support; and (Proposed) Order]

   Date:    December 21, 2017
   Time:    8:00 a.m.
   Dept:    Courtroom 12, 19th Floor
   Judge:   Hon. William H. Alsup

24          **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

JEFFREY JOHNSON (*admitted pro hac vice*)
jj@orrick.com
CHRIS RICHART (*admitted pro hac vice*)
crichart@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
609 Main Street
40th Floor
Houston, Texas  77002-3106
Telephone:    +1 713 658 6400
Facsimile:    +1 713 658 6401

YUFENG (ETHAN) MA (*admitted pro hac vice*)
yma@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
47/F Park Place
1601 Nanjing Road West
Shanghai 200040
People's Republic of China
Telephone:    +86 21 6109 7000
Facsimile:    +86 21 6109 7022

Attorneys for Defendants
SEMICONDUCTOR MANUFACTURING
INTERNATIONAL CORPORATION,
SEMICONDUCTOR MANUFACTURING
INTERNATIONAL (SHANGHAI) CORPORATION,
SEMICONDUCTOR MANUFACTURING
INTERNATIONAL (BEIJING) CORPORATION, and
SMIC AMERICAS

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT pursuant to Federal Rule of Civil Procedure 12(b), Defendants Semiconductor Manufacturing International Corporation, Semiconductor Manufacturing International (Shanghai) Corporation, Semiconductor Manufacturing International (Beijing) Corporation, and SMIC Americas (collectively "SMIC" or "Defendants") hereby move this Court for an Order dismissing this case.[1]  This Motion is noticed for hearing if necessary on Thursday, December 21, 2017 at 8:00 a.m. in Courtroom 12, 19th Floor, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA before the Hon. William H. Alsup.

Dated:  November 15, 2017                              ORRICK, HERRINGTON & SUTCLIFFE LLP

By:/s/ *Jeffrey Johnson*
JEFFREY JOHNSON
CHRIS RICHART
YUFENG MA
MICHAEL C. CHOW
HSIWEN LO

*Attorneys for Defendants*
*Semiconductor Manufacturing International*
*Corporation, Semiconductor Manufacturing*
*International (Shanghai) Corporation,*
*Semiconductor Manufacturing International*
*(Beijing) Corporation, And SMIC Americas*

---

[1] Leave to file this motion to dismiss for lack of standing was granted by Judge Alsup at the Case Management Conference on November 9, 2017.  11/9/2017 Hr. Tr. at 23:10-24, 24:24-25:7.

<b>MEMORANDUM OF POINTS AND AUTHORITIES</b>

## I.  INTRODUCTION

SMIC respectfully requests that the Court dismiss the present lawsuit due to Plaintiff Lone Star Silicon Innovations LLC's ("LSSI" or "Plaintiff") lack of standing.[1]

Although Plaintiff brought this suit in the guise of being the owner of the Patents-in-Suit, the recently produced agreement by which LSSI obtained the Patents-in-Suit from the original owner, Advanced Micro Devices ("AMD"), shows that AMD did not, in fact, transfer its patent rights to LSSI.[2] At best, AMD granted LSSI the right to grant a license to a specific list of companies. LSSI simply does not have the right to sue for infringement in its own name; that right remains with AMD.  LSSI can only be a part of this suit if it can establish that it is an "exclusive licensee" of the Patents-in-Suit, and joins AMD as its co-plaintiff.[3]  Otherwise, this suit must be dismissed.

## II.  FACTUAL BACKGROUND

The Patents-in-Suit were each issued with Advanced Micro Devices ("AMD") as the assignee. An assignment transferring 31 patents, including the 3 Patents-in-Suit, from AMD to Plaintiff Lone Star Silicon Innovations LLC was executed on August 4, 2016 and recorded at the U.S. Patent Office on August 5, 2016. *See* Declaration of Jeffrey Johnson ("Johnson Decl."), Ex. A.

Also on August 4, 2016, Plaintiff and AMD entered into a Patent Transfer Agreement (the "Agreement"). *See* Johnson Decl., Ex. B. The Agreement sets forth the terms under which AMD agreed to transfer the patents to Plaintiff, and the assignment of the patents was conditioned on the terms of the Agreement. Plaintiff ███████████████████████

---

[1] Leave to file this motion to dismiss for lack of standing was granted by Judge Alsup at the Case Management Conference on November 9, 2017.  11/9/2017 Hr. Tr. at 23:10-24, 24:24-25:7.
[2] The Patents-in-Suit are U.S. Patent Nos. 5,973,372, 6,103,611, and 6,388,330.
[3] LSSI does not allege in its Complaint that it is an exclusive licensee of the Patents-in-Suit, only that it is the "sole owner." *See* Compl., ¶¶ 12-14.

1  ████████████████████████████████. Agreement at 5.1. AMD ██████████
2  ██████████████████████████████████████████████████████. Agreement at 5.4.
3  ████ The Agreement places a number of restrictions on Plaintiff. Among them, Plaintiff ██
4  ████████████████████████████████████████████████████████████████████████
5  █. Agreement at 2.6 ██████████████████████████████████████████████ *Id*.
6  ████ Plaintiff further warranted that ████████████████████████████████████
7  ████████████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████████████████
9  ████ Agreement at 6.2(f). ██████████████████████████████████████████████
10 █████████████████████████████████ Agreement at p.3. While the
11 parties ██████████████████████████████████████████████████████████
12 ████████████████████████████ Agreement at 3.3(c). In the event Plaintiff
13 ████████████████████████████████████████████████████████████████████████
14 ██████████████████████████████████████████████████████████████. Agreement
15 at 4.3.

**III.   LEGAL STANDARD**

Standing to sue is a threshold issue. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). It is a jurisdictional question and a matter of law to be determined by the Court. *Rite-Hite corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (*en banc*). "The party bringing the action bears the burden of establishing that it has standing." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005).

"There are three general categories of plaintiffs encountered when analyzing the constitutional standing issue in patent infringement suits: those that can sue in their own name alone; those that can sue as long as the patent owner is joined in the suit; and those that cannot even participate as a party to an infringement suit." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007). The first category consists of patentees or assignee that hold all legal rights in the patent. *Id*. The second category consists of exclusive licensees, namely those who

have not only received the right to practice the invention, but also an express or implied promise that others will be excluded from practicing the invention. *See Rite-Hite*, 56 F.3d at 1552. The third category includes nonexclusive licensees, who may not even be co-plaintiff's in a suit with the patent owner. *See Sicom*, 427 F.3d at 976.

## IV. PLAINTIFF DOES NOT HAVE STANDING TO BRING THIS SUIT IN ITS OWN NAME

The first question is whether AMD, in fact, assigned the patents to Plaintiff. The mere fact that an assignment agreement was executed is not determinative. "We have not allowed labels to control by treating bare formalities of 'title' transfer as sufficient to determine that an 'assignment' of the entire exclusive right has occurred. Rather, we have explained that, '[t]o determine whether a provision in an agreement constitutes an assignment or license, one must ... examine the substance of what was granted.'" *Diamond Coating Technologies, LLC v. Hyundai Motor Amer.*, 823 F.3d 615, 618 (Fed. Cir. 2016) (*quoting Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 874 (Fed.Cir.1991)).

In order to be an assignment, an agreement must transfer one of three things: (1) the entire patent, (2) an undivided part or share of the entire patent, or (3) all rights under the patent in a specified geographical region of the United States. *See Rite-Hite*, 56 F.3d at 1551 (*citing Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891)). "A transfer of less than one of these three interests is a license, not an assignment of legal title." *Id*. at 1551-52.

While superficially it would appear that the Agreement transferred the entire patents, an assignment must include "all substantial rights in the patent." *Diamond Coating*, 823 F.3d at 618. Thus, even though in Diamond Coating the parties signed a document titled "Assignment of Patent Rights" and filed it with the Patent Office, *see* Johnson Decl., Ex. C, the court concluded that the agreement between the parties "did not convey all of the substantial rights in the patents-in-suit" and therefore "Diamond is not a 'patentee' under 35 U.S.C. §281." *Diamond Coating*, 823 F.3d at 621. In this case, AMD retained substantial rights in the patents, and therefore, the Agreement is only a license, not an assignment.

1  This is clearly seen in the fact that Plaintiff ▮▮▮

2  ▮▮▮

3  ▮▮▮ Agreement at 2.6 ("▮▮▮") and 3.4 ("▮▮▮"). "The right to

4  dispose of an asset is an important incident of ownership, and such a restriction on that right is a

5  strong indicator that the agreement does not grant Propat all substantial rights under the patent."

6  *Propat Intern. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007); *see also KW-2, LLC v.

7  Asus Computer Int'l*, 170 F. Supp.3d 1340, 1348 (D. Colo. 2016) (finding that an "encumbrance

8  on plaintiff's right to abandon" the patent is a right to dispose of an asset) (citing *Propat*, 473

9  F.3d at 1191). Indeed, the Federal Circuit has described the restriction of a transferee's ability to

10 assign its rights as "a fatal reservation of rights" showing that all substantial rights under the

11 patent were not transferred. *Sicom*, 427 F.3d at 979; *see also id.* ("[j]ust as the right to alienate

12 personal property is an essential indicia of ownership, the right to further assign patent rights is

13 implicit in any true assignment" (quoting *Calgon Corp. v. Nalco Chem. Co.*, 726 F.Supp. 983,

14 988 (D.Del.1989)). Thus the restriction on Plaintiff's ability to further assign the patents is fatal

15 to its claim of being the assignee.

16  That Plaintiff did not obtain all substantial rights in the patents is further demonstrated by

17 the limitations on its ability to exclude others under the patents. "[T]ransfer of the exclusive right

18 to make, use, and sell products or services under the patent is vitally important to an

19 assignment." *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354,

20 1360 (Fed. Cir. 2010). In this case, however, Plaintiff has ▮▮▮

21 ▮▮▮. Agreement at 6.2(f). While Plaintiff could

22 ▮▮▮

23 ▮▮▮. Agreement at 3.3(c). The fact that Plaintiff

24 ▮▮▮ is again fatal to the

25 claim that Plaintiff received all substantial patent rights. *See Intellectual Property Development,*

26 *Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1344 (Fed. Cir. 2001). ("Indeed, a

27 transferee that receives all substantial patent rights from a transferor would never need consent

28

from the transferor to file suit because such an assignment essentially transfers title in the patent to the transferee."); *see also* Diamond Coating, 823 F.3d at 620 ("[r]etaining control of [licensing or litigation] activities is [ ] critical to demonstrating that the patent has not been effectively assigned to the licensee.")

Finally, the fact that ▮▮▮▮▮▮▮▮▮▮ to the patents further demonstrates that Plaintiff failed to acquire all substantial rights in the patents. *Diamond Coating*, 823 F.3d at 619-20 (Fed. Cir. 2016); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1379-80 (Fed. Cir. 2000) ("[W]e pay particular attention to whether the agreement conveys *in full* the right to exclude others from making, using and selling the patented invention in the exclusive territory.") (emphasis in original). Likewise, the fact that ▮▮▮▮▮▮▮▮▮▮ shows that Plaintiff did not receive all substantial rights. *Abbott Labs. V. Diamedix Corp.*, 47 F.3d 1128, 1132-33 (Fed. Cir. 1995).

In sum, regardless of how AMD and Plaintiff chose to title the documents they signed, they did not operate to assign the Patents-in-Suit from AMD to Plaintiff. Since Plaintiff possesses neither the entire patent rights nor all substantial rights, it cannot sue in its own name alone. *Morrow*, 498 F.3d at 1339-40.

## V. CONCLUSION

This case presents an attempt by AMD to effectively "outsource" its patent litigation, seeking to have a third party enforce its patents and collect (unjustified) royalties, while insulating itself from the costs and burdens of litigation. The law, however, does not allow for such manipulation of the patent system. Because AMD did not effectively assign the patents to Plaintiff, Plaintiff has no standing to sue in its own name and the case should be dismissed.

| | |
|---|---|
| Dated: November 15, 2017 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | |
| | By:/s/ *Jeffrey Johnson* |
| | JEFFREY JOHNSON |
| | CHRIS RICHART |
| | YUFENG MA |
| | MICHAEL C. CHOW |
| | HSIWEN LO |
| | |
| | *Attorneys for Defendants Semiconductor Manufacturing International Corporation, Semiconductor Manufacturing International (Shanghai) Corporation, Semiconductor Manufacturing International (Beijing) Corporation, And SMIC Americas* |